# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MILTON MCDANIEL,**
    **Plaintiff,**

  v.                                                                                   Case No. 19-C-383

**DONNA LARSON,**
    **Defendant.**

## ORDER

Plaintiff Milton McDaniel, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. I screened the plaintiff's complaint, dismissed it for failure to state a claim, and permitted the plaintiff to file an amended complaint. The plaintiff complied, and I screened the amended complaint and allowed him to proceed on an Eighth Amendment claim against Nurse Donna Larson. The plaintiff thrice moved for summary judgment, and the defendant also moved for summary judgment.

## I. BACKGROUND[1]

### A.    Procedural Background

On June 11, 2019, I referred this case to Magistrate Judge Nancy Joseph for pretrial case management. ECF No. 17. On November 13, 2019, Judge Joseph entered a scheduling order setting an April 13, 2020 deadline for dispositive motions. ECF No. 24.

---

[1] Facts in this section are taken from the defendant's proposed findings of fact and declaration in support of her motion for summary judgment. ECF Nos. 33 & 34. The plaintiff did not respond to the defendant's facts or submit his own statement of proposed facts. I will consider the proposed facts only to the extent they are supported by evidence in the record. *See* Fed. R. Civ. P. 56(c)(1); Civil L. R. 56(b)(1)(C)(i) and (2)(B)(i)–(ii). I will consider arguments in the supporting memorandum only to the extent they properly refer to the statement of facts. *See* Civil L. R. 56(b)(6).

On March 10, 2020, the plaintiff filed his first motion for summary judgment, ECF No. 29, which the defendant opposes, ECF No. 30. At the April 13, 2020 deadline, the defendant moved for summary judgment. ECF No. 31. Despite an order from Judge Joseph to respond to the defendant's motion, the plaintiff failed to do so. He instead twice refiled his first motion for summary judgment and additional documents. ECF Nos. 36 & 40. The defendant submitted an additional brief opposing the second motion. ECF No. 38. Because the plaintiff failed to respond to the defendant's motion or her proposed facts, I will consider the motion unopposed and the facts uncontested. *See* Civil L. R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

**B.   The Parties**

The plaintiff is incarcerated at Waupun Correctional Institution (Waupun). ECF No. 33, ¶ 1. Larson is a registered nurse who has worked at Waupun since 2009. *Id.*, ¶ 2.

In his amended complaint the plaintiff stated that the defendant gave him a lower bunk restriction in 2017 but removed that restriction in February 2019 despite knowing the plaintiff suffered from "a bad ankle and a bad back." ECF No. 14 at 2–3. He seeks an award of damages. *Id.* at 4.

**C.   The Plaintiff's Medical History[2]**

The plaintiff has a history of pain in his ankle, knee, and other places. He received physical therapy for his ankle from November 7, 2016, through January 19, 2017, after which he was discharged without a prescription for further therapy. ECF No. 33, ¶ 3; ECF

---

[2] The defendant describes many of the plaintiff's medical visits that do not concern his allegations underlying this lawsuit or defendant Larson. I will not discuss those unrelated medical issues or the plaintiff's treatment.

2

No. 34-1 at 39–42. Dr. Manlove (who is not a defendant) saw the plaintiff on January 31, 2017, for continuing ankle pain. ECF No. 33, ¶ 4. He had a visit with defendant Larson on February 17, 2017, during which he complained about pain in his ankle, knee, and other places. *Id.*, ¶ 5; ECF No. 34-1 at 37–38. Larson recommended exercises that caused him no pain and extended his prescription for Naproxen. ECF No. 33, ¶ 5; ECF No. 34-1 at 37–38. The plaintiff saw Dr. Manlove on April 11, 2017, with complaints of pain in his "mid-sternal region" and again on April 26, 2017 for right knee pain. ECF No. 33, ¶¶ 7–8. The same day he saw Larson for psychological issues and concerns about his asthma. *Id.*, ¶ 7; ECF No. 34-1 at 35–36. The medical record shows no mention of ankle or back pain or a bunk restriction. On June 30, 2017, he complained to Nurse Ziegler (who is not a defendant) of knee pain and other issues. ECF No. 33, ¶ 9.

On October 2, 2017, the plaintiff injured his ankle playing handball, but x-rays revealed no fracture. ECF No. 33, ¶ 15. Nurse Tapio (not a defendant) prescribed an ankle brace, crutches, an ice bag, and an ace wrap but no bunk or housing restriction. *Id.*, ¶ 16; ECF No. 34-1 at 14, 44. The medical record notes the plaintiff had no complaints of pain despite standing at a door for ten minutes. ECF No. 34-1 at 13. The plaintiff had a follow-up a week later with Nurse Foster (who is not a defendant) and was told to continue icing his ankle. ECF No. 33, ¶ 17; ECF No. 34-1 at 12. On October 15, 2017, the plaintiff requested a lower bunk assignment, and the Health Services Unit scheduled him to see Dr. Manlove. ECF No. 33, ¶ 18; ECF No. 34-1 at 45. The record does not reveal whether the appointment occurred or whether the plaintiff was prescribed a lower bunk. On November 22, 2017, the plaintiff had a follow-up appointment with Nurse Kacyon (not a defendant), who observed that the plaintiff had a steady gait and no

difficulty ascending stairs. ECF No. 33, ¶ 19. On March 13, 2018, the plaintiff complained to Nurse Block (not a defendant) about on-going ankle pain after performing various exercises, including "burpees, lunges, squats, and weights." *Id.*, ¶ 20; ECF No. 34-1 at 8–9. The nurse prescribed the plaintiff an ace wrap but no lower bunk restriction. ECF No. 34-1 at 9.

The plaintiff saw Dr. Manlove on March 1, 2019, for complaints of right-side pain from his ankle to his neck. ECF No. 33, ¶ 26; ECF No. 34-1 at 49. Dr. Manlove noted the plaintiff moved with a normal gait and good posture and showed no sign of distress. ECF No. 33, ¶ 26; ECF No. 34-1 at 49. He prescribed the plaintiff acetaminophen and an extra pillow for a year but no lower bunk restriction. ECF No. 33, ¶ 26; ECF No. 34-1 at 49, 55. The plaintiff again saw Dr. Manlove on July 31, 2019, for a right ankle injury. ECF No. 33, ¶ 29. Dr. Manlove prescribed an ace wrap and ice therapy but no lower bunk restriction. *Id.*; ECF No. 34-1 at 54.

### D. Special Needs Committee

The Special Needs Committee (SNC) determines whether an inmate requires a medical restriction or special need, including a particular bunk assignment. ECF No. 33, ¶ 30; ECF No. 34-2 at 1, 9. The SNC members review inmate requests for special needs accommodations and make a recommendation based on the role of each committee member and the inmate's medical records. ECF No. 33, ¶ 32. If the SNC approves a request, nursing staff will send the inmate a memorandum, log the special need in the inmate computer system, and document the special need on the Medical Restrictions/Special Needs form listing a start and stop date. *Id.*, ¶ 34. Staff also will send the inmate a copy of that form. *Id.* If the request is denied, staff will notify the inmate via

memorandum. *Id.*, ¶ 35. Inmates must notify the SNC in writing at least one month in advance when a special need is about to expire to ensure continuity of that special need, if it still applies. *Id.*, ¶ 36.

Defendant Larson is a member of the SNC and reviews special-needs requests. ECF No. 33, ¶ 37. She does not have the authority to unilaterally revoke a special-needs restriction. *Id.* Nor does Larson have the authority to make a cell or bunk assignment; Security Unit Managers make those decisions and would not need to contact Larson directly about an assignment. *Id.*, ¶ 38. Larson is one of two health care staff members on the SNC who has access to medical records. *Id.*, ¶ 49. She does not enter an order removing a restriction unless the SNC decides to remove it. *Id.*

### E. The Plaintiff's Lower Bunk Restriction

On July 27, 2015, a psychologist provided the plaintiff an indefinite lower bunk and first-tier restriction for psychological (not physical) health reasons. ECF No. 33, ¶ 39; ECF No. 34-3. Larson was not involved in that decision. ECF No. 33, ¶ 40. Larson states that the plaintiff's lower bunk restriction would have appeared in his Mental Health Records, which she does not edit. *Id.*, ¶ 50.

On November 13, 2018, the plaintiff submitted a request to renew his lower bunk restriction. ECF No. 33, ¶ 41; ECF No. 34-1 at 7. He stated that he had "a bad hab[it] of rolling off the top bunk . . . and plus I have a m[e]ssed up ankle and waist to[o]." ECF No. 34-1 at 7. Two days later he submitted a second request to update his lower bunk restriction. ECF No. 34-1 at 6. His requests were referred to the SNC. *Id.* at 6–7. On November 29, 2018, the SNC reviewed and denied his requests, explaining that his medical records did not reveal a need for the restriction and his request otherwise did not

5

meet the SNC's policy requirements for a lower-bunk restriction. ECF No. 33, ¶¶ 43–45; ECF No. 34-1 at 3.

On March 7, 2019, the Health Services Manager notified the plaintiff in a written memorandum that he did not have a lower bunk restriction in his medical records and denied his request (no date is provided) for a lower bunk. ECF No. 33, ¶ 46; ECF No. 34-1 at 2. On March 22, 2019, the plaintiff submitted a health-services request "to get my lower bunk back" because "my back and ankle are really messed up." ECF No. 33, ¶ 47; ECF No. 34-1 at 5. Five days later, the plaintiff submitted another request for health services in which he states that "Nurse Larson had know [sic] business of taking my lower bunk away at all." ECF No. 33, ¶ 48; ECF No. 34-1 at 4.

Larson states that the SNC met on March 28, 2019, during which the plaintiff's requests about his lower bunk restriction were presented to the SNC. ECF No. 33, ¶ 51; ECF No. 34-1 at 4–5. The SNC reviewed the plaintiff's medical record and again determined that he did not meet the medical criteria for a lower bunk restriction. ECF No. 33, ¶ 52; ECF No. 34-1 at 1. The SNC denied the plaintiff's request and notified him via memorandum. ECF No. 33, ¶ 52; ECF No. 34-1 at 1. The response to his March 22, 2019 request for health services states, "See memo 3/28/19," referencing the SNC's determination not to approve his request for a lower bunk restriction. ECF No. 33, ¶ 52; ECF No. 34-1 at 5. Despite not having a lower bunk restriction, the plaintiff has been continuously assigned to a lower bunk since at least September 30, 2015. ECF No. 33, ¶ 53; ECF No. 34-4.

6

Case 2:19-cv-00383-LA    Filed 08/24/20    Page 6 of 11    Document 45

## II. ANALYSIS

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* "[D]isputed facts that are not outcome-determinative are not material and will not preclude summary judgment." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### A. The Plaintiff's Motions for Summary Judgment

The plaintiff filed the same one-page motion for summary judgment three times on three different dates. ECF Nos. 29, 36 & 40. With the second and third filings he included a one- or two-page brief in support. ECF Nos. 37 & 41. He did not include with any of the filings proposed findings of fact or an affidavit or declaration in support. The plaintiff timely filed the first motion before the April 13, 2020 deadline. His second and third motions were filed after that date. The plaintiff did not request permission to file additional, untimely motions for summary judgment or to include additional materials after the deadline, and I

did not permit the successive filings. The plaintiff also fails to appropriately support his motions with facts or evidence, and none of the motions complies with Civil L. R. 56(1). I will therefore deny the plaintiff's motions for summary judgment.

**B.     Eighth Amendment Claim**

I review the plaintiff's claim that Larson removed his lower bunk restriction under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To show a valid Eighth Amendment claim, the plaintiff must demonstrate both that he "suffered from an objectively serious medical condition" and that Larson was "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). An objectively serious medical condition is "one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Courts will not question a medical professional's course of treatment unless it is "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising [her] professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official may be found liable under the Eighth Amendment only if she subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837; *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

The evidence shows the plaintiff was given an indefinite lower tier and lower bunk restriction as of July 27, 2015. The restriction was based on the plaintiff's mental-health needs and not a medical condition involving his ankle or back. Larson was not involved

in the decision to approve the restriction. But there is no evidence explaining how, why, when, or even whether this restriction was lifted. The plaintiff insists it was removed and requested that it be reinstated because he had a habit of rolling out of bed and had issues with his back and ankle. It is undisputed that the SNC denied the plaintiff's request because there was no medical reason for him to have a lower bunk restriction. It also is undisputed that the SNC's decision was based on the plaintiff's medical record and not his mental-health record, to which Larson does not have access. The plaintiff offers no evidence to undermine the SNC's conclusion that his medical records did not necessitate a lower bunk restriction. At least two nurses observed him able to ascend stairs and ambulate effectively despite his complaints of pain in his ankle, side, knee, and mid-section. None of the medical records discuss his complaints of back pain. The plaintiff fails to support his conclusion that his lower bunk restriction constituted an objectively serious medical condition to which Larson (or the SNC) was indifferent.

Nor is there evidence supporting the plaintiff's claim that Larson removed the restriction. Larson is one member of the SNC and could not unilaterally deny the plaintiff's request. The plaintiff offers nothing to support imputing the SNC's decision not to approve his lower bunk restriction to Larson alone. Moreover, Larson is a medical professional and not a mental-health professional, and there is no evidence that she can remove a mental-health restriction. Given the lack of evidence supporting the plaintiff's claim, a reasonable jury could not conclude that the decision to deny the plaintiff a lower bunk restriction significantly departed from accepted professional standards or practices or that Larson should be held responsible for that decision.

Even if the plaintiff had shown that his lower bunk restriction constitutes a serious medical need and that Larson is responsible for its removal, it is undisputed that the plaintiff has had a lower-bunk assignment since at least September 2015. He does not contest that he has always had a lower-bunk assignment, and he submitted no evidence showing otherwise. He therefore fails to demonstrate he ever had to sleep in a top bunk despite not having his lower bunk restriction or that he rolled out of bed or otherwise suffered an injury by having to sleep in an upper bunk. Without demonstrating any injury, he is not eligible for an award of damages—the only relief he seeks. *See* 42 U.S.C. § 1997e(e); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (citing *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999)).

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the plaintiff's motions for summary judgment (ECF Nos. 29, 36 & 40) are **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (ECF No. 31) is **GRANTED**. This case is **DISMISSED**. The clerk's office shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. I may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I may not extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 24th day of August, 2020.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge